```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LISA S. BEAN, | Civ. No. 12-5127 (NLH/KMW) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| STATE OF NEW JERSEY JUDICIARY CAMDEN VICINAGE, et al., | |
| Defendants. | |

**APPEARANCES:**
F. Michael Daily, Jr., Esquire
F. Michael Daily, Jr., LLC
Sentry Office Plaza
216 Haddon Avenue
Suite 100
Westmont, New Jersey 08108
    *Attorney for Plaintiff Lisa S. Bean*

Kelly A. Samuels, Esquire
State of New Jersey
Office of the Attorney General
Division of Law
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
    *Attorneys for Defendants State of New Jersey Judiciary*
    *Camden Vicinage, Peter Cupo, and Michael O'Brien*

**HILLMAN, District Judge**

This matter comes before the Court by way of a motion to dismiss [Doc. No. 20] by Defendants State of New Jersey Judiciary Camden Vicinage, Peter Cupo, and Michael O'Brien

(collectively, "Defendants") seeking to partially dismiss Plaintiff's first amended complaint (hereinafter, the "amended complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff opposes the motion to the extent Defendants seek to dismiss several of Plaintiff's Title VII claims but generally concedes that her equal protection claims should be dismissed. The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For reasons expressed below, Defendants motion for partial dismissal will be granted.

**I.   JURISDICTION**

In the amended complaint, Plaintiff asserts claims for discrimination and retaliation pursuant to: (1) 42 U.S.C. §§ 2000e-2, 2000e-3 in violation of Title VII of the Civil Rights Act of 1964; and (2) 42 U.S.C. 1983 for deprivations of her equal protection rights afforded under the Fourteenth Amendment. The Court exercises jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

**II.  BACKGROUND**

Plaintiff is an African American female who has been employed by Defendant State of New Jersey Judiciary Camden Vicinage since July of 1998.  (Am. Compl. [Doc. No. 15] ¶¶ 1, 8).  Plaintiff's amended complaint names two other Defendants in

2

this action: Peter Cupo and Michael O'Brien.  (Id. at ¶¶ 2-4.) Defendants Cupo and O'Brien are being sued in their individual capacities.  (Id. ¶¶ 3-4.)

In this matter, Plaintiff generally claims that her prior participation as a witness in an Equal Employment Opportunity Commission ("EEOC") investigation into claims against Defendants Cupo and O'Brien for racial discrimination made by another Judiciary employee ultimately lead to her being discriminated against and retaliated against by these same individuals. Specifically, Plaintiff represents that beginning in 2003 and ending in September of 2008, Plaintiff "offered information and testimony in support a racial discrimination claim by a co-worker" which eventually culminated in a law suit filed in this District.  (Id. ¶ 11.)  Plaintiff asserts that she spoke with an investigator in 2003 and subsequently authored an affidavit and gave deposition testimony in that matter in June and September of 2008, respectively.  (Id.)  Plaintiff claims that the affidavit she authored in the prior matter "detailed various hostile actions against African American females by ... Defendant Cupo."  (Id. ¶ 12.)  Plaintiff alleges that Defendants Cupo and O'Brien were both named as defendants in the discrimination law suit filed by her co-worker and "therefore [they] had actual knowledge that [Plaintiff] had supported the claims" of her co-worker in the prior suit.  (Id. ¶ 14.)  Based

3

on Plaintiff's affidavit in that matter, Plaintiff contends that both Defendant Cupo, and his supervisor, Defendant O'Brien "would have been aware that [Plaintiff] claimed that ... Cupo had a propensity to mistreat African American females." (Id. ¶ 15.)

According to Plaintiff, despite her "many years of service she has never received a promotion" from her employer. (Id. ¶ 9.) In November of 2008, Plaintiff attempted to seek a promotion by requesting to be reclassified from her position of Judiciary Clerk II to the position of Judiciary Clerk IV. (Id. ¶¶ 18-19). Plaintiff decided to seek this promotion after Denise Gonzalez, a co-worker of hers, who possessed "a lower educational level than Plaintiff[,]" was solicited by Defendant Cupo for the same reclassification approximately five months earlier. (Id. at ¶¶ 15-16.) Gonzalez successfully obtained her reclassification on October 31, 2008. (Id. at ¶ 17.)

Plaintiff alleges that compared to Gonzalez, Plaintiff was the "'lead worker' when the supervisor was absent" and that Plaintiff regularly "perform[ed] Gonzalez's duties during her frequent medical absences." (Id. at ¶ 16.) Moreover, during her employment, Plaintiff represents that she met or exceeded her employer's reasonable expectations by consistently earning "satisfactory performance evaluations and maintaining an unblemished disciplinary record." (Id. at ¶ 10.) Yet, despite

4

"being similarly situation to ... Gonzalez and being better qualified than her[,]" Plaintiff was later denied the reclassification she sought – the same reclassification Gonzalez sought at Defendant Cupo's urging. (Id. at ¶ 16.) The denial of Plaintiff's reclassification was subsequently affirmed on administrative appeal. (Id. at ¶ 19.)

Plaintiff alleges that the decision to grant or deny her the reclassification (i.e., promote her) rested on the evaluations of Plaintiff's immediate supervisor, Ms. Rosario, and Defendant Cupo. (Id. at ¶¶ 21-22.) After Plaintiff's reclassification was denied, Plaintiff claims that Rosario told Plaintiff that she was "very surprised" that Plaintiff did not receive the promotion. (Id. at ¶ 20.) Plaintiff represents that Rosario "thought that if Ms. Gonzalez was reclassified there should have been no problem with Plaintiff being reclassified." (Id.) Plaintiff alleges that had she been reclassified, she would have received "a 5% salary increase and therefore ... Plaintiff sustained a tangible adverse employment action as a result of her reclassification request" being denied. (Id. at ¶ 24.)

Based on these events, Plaintiff asserts that "the only explanation for the rejection [of her reclassification request] would have been negative input from Cupo with the concurrence of O'Brien" given that she was "better qualified for

5

reclassification than Gonzalez and [Plaintiff's] immediate supervisory supported the reclassification[.]" (Id. ¶ 22.) Plaintiff further claims that Defendants Cupo and O'Brien did not have a legitimate nondiscriminatory reason for objecting to the reclassification and thus their negative input was a pretext for discrimination. (Id. ¶ 23.)

Approximately sixteen months after she sought reclassification, in April of 2010, Plaintiff alleges that she submitted a voluntary furlough request to her employer.[1] (Id. ¶ 25). Plaintiff claims that compared to the manner in which "similar requests of white and Hispanic employees had been treated by [Defendant] Cupo, ... Plaintiff's request was subjected to significant limitations."[2] (Id.) Over a year later, in June of 2011, Plaintiff alleges that she was subsequently "denied the right to perform her duties as a union Chief Steward[.]" (Id. ¶ 26.) Plaintiff contends that she was denied this right on the "pretext [that] the case in question required [her to] travel to Cherry Hill[.]" (Id.) Plaintiff

---

[1]   The amended complaint does not set forth any specifics regarding Plaintiff's voluntary furlough request such as the reason for the request, the number of days requested, or the specific date on which her request was made in April of 2010.

[2]   Plaintiff does not describe the nature of the "significant limitations" she was subjected to regarding her voluntary furlough request.

6

maintains, however, that her predecessor in this position "had always been allowed to travel." (Id.)

Plaintiff claims that the decisions to substantially limit her voluntary furlough request and to deny her the ability to conduct her duties as union Chief Steward were made by Defendants Cupo and O'Brien "without any reasonable justification and for the purpose to retaliate against ... Plaintiff." (Id. ¶ 27.) Plaintiff further alleges that these decisions by Defendants Cupo and O'Brien were of such a nature that they "would discourage a reasonable person from supporting a charge of discrimination." (Id. ¶ 28.)

Relying on the facts sets forth above, Plaintiff now brings claims for discrimination and retaliation pursuant to 42 U.S.C. §§ 2000e-2, 2000e-3 in violation of Title VII of the Civil Rights Act of 1964 and pursuant to 42 U.S.C. 1983 for deprivations of her equal protection rights afforded under the Fourteenth Amendment.

## III. DISCUSSION

Defendants answered [Doc. No. 19] the amended complaint on November 18, 2013, and subsequently filed the pending motion to partially dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Although Defendants seeks partial dismissal under Rule 12(b)(6), a motion under Rule 12(b)(6) is improper at this stage in the litigation because "[a] Rule 12(b) motion to

7

dismiss a complaint must be filed before any responsive pleading." Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). Rather, it is Federal Rule of Civil Procedure 12(c) that provides the proper vehicle for Defendants' motion at this time. Rule 12(c) provides in pertinent part that "[a]fter the pleadings are closed ... a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).

However, "[t]he difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) motion for judgment on the pleadings is only a matter of timing[.]" Newton v. Greenwich Twp., No. 12-CV-238, 2012 WL 3715947, at*2 (D.N.J. Aug. 27, 2012). That is because "[a] motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010) (citing Turbe, 938 F.2d at 428). Accordingly, because Defendants filed an answer to the amended complaint before filing the instant motion, their motion is properly construed as a motion for judgment on the pleadings made pursuant to Rule 12(c), and the Court decides the motion under the standard for motions to dismiss brought pursuant to Rule 12(b)(6).

In considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to

Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).

   First, under the Twombly/Iqbal standard, a district court "must accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).  Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950).  "[A] complaint must do more than allege the plaintiff's entitlement to relief."  Fowler, 578 F.3d at 211; see also

9

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556).  "The defendant bears the burden of showing that no claim has been presented." Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

**IV.  ANALYSIS**

Plaintiff's amended complaint sets forth two counts.  Count I alleges that Defendants discriminated and retaliated against Plaintiff with respect to her compensation, terms, conditions, and privileges of employment in violation of Title VII of the Civil Rights Act of 1964 based on her race and her conduct in supporting a prior charge of discrimination brought against her employer.  Count II, brought pursuant to 42 U.S.C. § 1983, alleges that Defendants denied Plaintiff equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.

### A. Equal Protection Claims

Count II of Plaintiff's amended complaint asserts that "[o]n account of ... Plaintiff being an African American and on account of her having supported a charge of discrimination, the Defendants, Cupo and O'Brien, denied ... Plaintiff equal protection of the law." (Am. Compl. ¶ 36.)  Defendants seek to dismiss Plaintiff's equal protection claims in Count II on the basis that her equal protection claims, brought pursuant to 42 U.S.C. § 1983, are barred by the two year statute of limitations governing such claims.  (Br. in Supp. of Defs.' Mot. to Dismiss [Doc. No. 20-1] (hereinafter, "Defs.' Br."), 10-11.)  Specifically, Defendants contend that the statute of limitations bars these claims arising from Plaintiff's 2008 reclassification request and from her 2010 request for voluntary furlough.  (Id. at 10.)  Plaintiff concedes that Count II of the amended complaint alleging equal protection denials under Section 1983 "must be dismissed as the relevant statute of limitations is two years" and the actions giving rise to these claims "occurred more than two years prior to the filing of this complaint."  (Pl.'s Resp. to Defs.' Mot. to Dismiss [Doc. No. 23] (hereinafter, "Pl.'s Resp."), 11.)  Accordingly, Defendants' motion will be granted with respect to Plaintiff's equal protection claims arising from her 2008 reclassification request

and her 2010 voluntary furlough request, and these claims will be dismissed with prejudice.

Defendants also argue that Plaintiff's claim for retaliation is not actionable under the Equal Protection Clause and must be dismissed. (Defs.' Br. 12-13.) Citing <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 298 n.6 (3d Cir. 2006), Defendants argue that Plaintiff's claim for retaliation is not cognizable under the Equal Protection Clause because a retaliation claim simply does not implicate one's equal protection rights. Plaintiff acknowledges that "'a pure or generic retaliation claim simply does not implicate the Equal Protection Clause.'" (Pl.'s Resp. 12.) Plaintiff argues, however, that the amended complaint alleges that Defendants Cupo and O'Brien "engaged in a campaign of harassment and intimidation in retaliation against [P]laintiff for participating and supporting claims of discrimination." (<u>Id.</u> at 13.)

The facts alleged in the complaint, even taken as true, amount to a claim for pure, generic retaliation and thus do not implicate Plaintiff's equal protection rights. The Court is not persuaded by Plaintiff's attempts to turn a typical retaliation claim into an equal protection violation. As Defendants correctly point out, a pure claim for retaliation is not

cognizable under the Equal Protection Clause, and this claim must be dismissed with prejudice.[3]

### B. Title VII Statute of Limitations

Defendants also argue that Plaintiff's Title VII claim is barred by the statute of limitations to the extent her claim arises out of her April 2010 voluntary furlough request. (Defs.' Br. 7-9.)  Defendants contend that Plaintiff's allegations, and specifically her 2010 voluntary furlough request, are based on separate, discrete acts.  (Id. at 9.) Accordingly, Defendants assert that Plaintiff was required to file a complaint with the EEOC within 300 days – by February 24, 2011 – regarding the significant limitations placed on her April 2010 furlough request.  (Id.)  However, Plaintiff did not file her complaint regarding this incident until July 27, 2011, which was 456 days after her claim accrued.  (Id.)  Thus, Defendants maintain that this portion of Plaintiff's Title VII claim must be dismissed.

Apparently conceding that her Title VII claim arising out of the April 2010 furlough request is time barred if the Court considers it a discrete act, Plaintiff counters Defendants' argument by claiming instead that she is alleging a continuing

---

[3]     Given the dismissal of Plaintiff's purported claim for retaliation under the Equal Protection Clause, the Court need not address Defendants' argument that Cupo and O'Brien are entitled to qualified immunity.

violation of her rights over a period of time. (Pl.'s Resp. 8-10.) Plaintiff asserts that she was discriminated against and retaliated against and therefore her claims should stand. (Id. at 9-10.)

Specifically, Plaintiff cites to Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984) for the proposition that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of the proceedings before the Commission." (Pl.s' Resp. 9.) Relying on this narrow excerpt from Howze, Plaintiff argues she filed an initial charge with the EEOC and "this action by [D]efendants [regarding her 2010 furlough request] followed the filing[,]" making it unnecessary under Howze to file a new complaint with the EEOC alleging another act of discrimination. (Id. at 9-10.) Thus, Plaintiff contends that Defendants are incorrect in their assertion that Plaintiff needed to file a new charge alleging another unlawful employment practice regarding the limitations placed on her 2010 furlough request. (Id. at 10.)

In New Jersey, claims brought pursuant to Title VII must be filed with the EEOC "within 300 days after the alleged unlawful employment practice occurred." Bihler v. Singer Co., 710 F.2d

14

96, 97 n.2 (3d Cir. 1983) (explaining that "[p]rospective [employment discrimination] plaintiffs have 300 days to file a charge with the EEOC in states that have a procedure for conciliation by state agencies, and 180 days to file if the allegedly discriminatory act took place in a state without such a parallel mechanism.  New Jersey falls within the former category.") (internal citation omitted).  In employment discrimination actions such as this, the limitations period begins with the "time of the discriminatory act."  Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir. 1992).  However, where the discriminatory conduct constitutes a "continuing violation," "the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first."  Id.; see also West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995) (applying a continuing violation theory to Title VII action).  Under this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001).

　　　By contrast, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  In order for the "clock" to start, the specific discriminatory or

15

retaliatory practice must be identified. Delaware State Coll. v. Ricks, 449 U.S. 250, 257 (1980). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Morgan, 536 U.S. 101 at 114. The Supreme Court has held that the continuing violations doctrine is not applicable to Title VII actions based on discrete discriminatory or retaliatory acts.[4] Id. at 114. The Third Circuit has similarly recognized a non-exhaustive list of discrete acts which includes "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).

To the extent Plaintiff relies on Defendants placing significant limitations on her voluntary furlough request as part of her Title VII claim, the Court finds this conduct to be

---

[4] The continuing violations doctrine is applicable and frequently utilized in actions claiming, for example, a hostile work environment because unlike the instant case, the hostile work environment theory is "designed explicitly to address situations in which the plaintiff's claim is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant." O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006).

discrete act, easily identifiable to Plaintiff.  This act was also substantially separated in time from the 2008 reclassification request and the 2011 union Chief Steward issue.  Each of the three incidents alleged in Plaintiff's amended complaint constitutes a separate actionable unlawful employment practice.[5]  Thus, Plaintiff's argument for the applicability of

---

[5]  Plaintiff's argument that the Third Circuit's ruling Howze made it unnecessary for her to file a new charge regarding the 2010 furlough request is unavailing.  Howze is not applicable to the facts of this case.  The proposition relied upon by Plaintiff regarding the parameters of a civil action and the scope of an EEOC investigation was not made with respect to a determination of whether a specific claim was timely under the 300 day filing period.  750 F.2d at 1212.  Rather, this concept was articulated only in the context of deciding whether the district court abused its discretion in denying Howze's motion to amend her complaint to add a claim for retaliation for her involvement with the Jones & Laughlin Black Caucus.  Id.
   The only unlawful employment practice Howze alleged was a failure to promote.  Id.  Because the district court did not provide any reasons for denying leave to amend, the Third Circuit separately analyzed whether amendment should have been permitted, and concluded that there was no prejudice to Jones and Laughlin as the employer.  Id.  The Third Circuit ultimately permitted amendment and explained in a subsequent opinion that "[t]he discrimination and retaliation claims [Howze sought to bring] were alternative allegations regarding the employer's failure to promote the plaintiff, and the facts supporting the former allegation were the same as those supporting the latter." Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 414 (3d Cir. 2010) (citing Howze, 750 F.2d at 1212).
   By contrast, Plaintiff here alleges three discrete unlawful employment practices: (1) her 2008 reclassification request being denied (failure to promote); (2) her 2010 furlough request being substantially limited (wrongful denial of leave); and (3) her inability to fully perform as the union Chief Steward (wrongful denial of performance of duties).  These are separate discrete acts with different facts underlying each one, and cannot be considered as "alternative allegations" for the same unlawful employment practice as was the case in Howze.

17

the continuing violations doctrine is unconvincing here. Plaintiff does not allege any facts sufficient to support her contention that these three incidents were part of a continuing violation.

Accordingly, in order for a charge related to the April 2010 voluntary furlough request to be timely filed under Title VII, Plaintiff was required to file a charge on this particular discrete act by February 24, 2011 at the latest (assuming April 30, 2010 was the date on which this conduct occurred).  As Plaintiff concedes, she failed to file a timely EECO charge with respect to her April 2010 furlough request.  Therefore, to the extent Plaintiff's Title VII claims arise out of the 2010 furlough request, this portion of her claim is barred by the statute of limitations and must be dismissed with prejudice.

**V.   CONCLUSION**

For the reasons set forth herein, Defendants' motion [Doc. No. 20] for partial dismissal is granted.  An Order consistent with this Opinion will be entered.


Date: June 30, 2014                    s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.