IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LISA S. BEAN,

    Plaintiff,

      v.

SUPERIOR COURT OF NEW JERSEY
CAMDEN VICINAGE, et al.,

    Defendants.

CIVIL NO. 12-5127 (NLH/KMW)

**OPINION**

**APPEARANCES:**

F. MICHAEL DAILY, JR.
SENTRY OFFICE PLAZA
216 HADDON AVENUE
SUITE 100
WESTMONT, NJ 08108
    *Attorney for Plaintiff*

ERIC SCOTT PASTERNACK
STATE OF NEW JERSEY
DIVISION OF LAW
25 MARKET STREET
P.O. BOX 093
TRENTON, NJ 08625
    *Attorney for Defendants*

<u>**HILLMAN**</u>, District Judge

    This matter has come before the Court on the motion of

Defendants Peter Cupo, Mike O'Brien, and the State of New Jersey

Judiciary[1] for summary judgment on Plaintiff Lisa Bean's claims of

---

[1] The Court notes that Congress has specifically abrogated the
states' Eleventh Amendment immunity in the employment context.
<u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 453 n.9, 96 S.Ct. 2666,
2670 n.9, 49 L.Ed.2d 614 (1976); <u>Shawer v. Indiana Univ. of Pa.</u>,
602 F.2d 1161, 1163 (3d Cir. 1979) ("It is therefore clear

race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964.  Plaintiff also filed a motion to seal. For the reasons set forth below, Defendants' motion to dismiss will be granted and Plaintiff's motion to seal will be granted.

I.   **BACKGROUND**

This case concerns whether Plaintiff, an African American state judiciary employee, was discriminated against based on her race when she was not encouraged by her department manager, Peter Cupo, to apply for a reclassification/promotion where Mr. Cupo encouraged Plaintiff's Hispanic co-worker, Denise Gonzalez. Plaintiff further alleges she was retaliated against through travel restrictions in her position as Chief Steward of her union due to her participation as a witness in another co-worker's race discrimination lawsuit.

**A. Facts Relevant to Plaintiff's Reclassification Request**

The Administrative Office of the Courts Classification Unit ("Classification Unit") administers the reclassification process for state judiciary employees. (Pl.'s Responses to Defendants' Rule 56.1 Statement of Materials Facts ("SMF") ¶ 8 [Doc. No. 50].)  The

---

beyond question that when Congress ... extended Title VII to state governments, it did so pursuant to Section 5 of the Fourteenth Amendment and thereby abrogated any existing immunity of the states from liability for discriminatory employment practices.").

reclassification process is used to determine if an employee is performing out-of-title job work requiring their position or responsibilities to be reclassified.  (SMF ¶ 9.)

To initiate the reclassification process, an employee fills out a Reclassification Request Form which is signed by the employee's immediate supervisor and division manager, as well as the human resources manager and the trial court administrator for the vicinage.  (SMF ¶¶ 10-11.)  Following the submission of the Request Form, the employee and immediate superior must answer the Job Information Questionnaire ("JIQ") which measures the amount of time an employee spends on job tasks and presents a picture of the work performed as a percentage of the employee's total job.  (SMF ¶¶ 12-13.)  If an employee disagrees with the decision of the Classification Unit he or she can appeal the decision to the Classification Review Board ("CRB") which is comprised of a manger, union representative, and a subject matter expert.  (SMF ¶¶ 17-20.)

Plaintiff began employment in the Camden vicinage of the state judiciary in 1998 as a Judiciary Account Clerk II.  (SMF ¶ 1.) Plaintiff works in the Finance Division and also serves as the Chief Steward of the New Jersey AFL-CIO Judiciary Council of Affiliated Unions, Office and Professional Employees International Union, Local 32 (the "Union").  (SMF ¶ 2.)

Plaintiff's co-worker, Denise Gonzalez, also began working for Defendants in 1998, as a clerk typist. (SMF ¶ 4.) Plaintiff and Ms. Gonzalez were both directly supervised by Evelyn Rosario during the relevant time period. (SMF ¶ 3.) Peter Cupo supervised the entire finance division. (SMF ¶ 5.) In 2000, Ms. Gonzalez was promoted to Account Clerk 2. On June 20, 2008, Ms. Gonzalez applied for reclassification. (SMF ¶ 37.) Sometime prior to June 20, 2008, Mr. Cupo and Ms. Gonzalez discussed Ms. Gonzalez's desire to obtain a reclassification and promotion to a higher clerk level. Ms. Gonzalez felt she often performed out-of-title work, particularly when her supervisor Ms. Rosario was not there. Ms. Gonzalez testified that during this conversation, Mr. Cupo "encouraged" her to apply for reclassification (Gonzalez Dep. 49:20-21 [Doc. No. 43-5]), helped her fill out the reclassification paperwork (Id. 54:6-12), and reminded her to fill out the paperwork (Id. 54:13-17).[2] On October 31, 2008, Ms. Gonzalez received a letter notifying her that she would be reclassified to "Judiciary Clerk 4." (SMF ¶ 38.)

Plaintiff testified that after Ms. Gonzalez told her that Mr.

_____

[2] Plaintiff testified that Ms. Gonzalez previously told her that Mr. Cupo promised Ms. Gonzalez to do "everything in his power" to secure her reclassification. (Pl.'s Dep. 19:5-22 [Doc. No. 43-4]). This testimony constitutes double hearsay and is not admissible on this motion for summary judgment. However, similar testimony is found in Ms. Gonzalez's deposition which the Court does consider, infra.

4

Cupo encouraged her to apply for reclassification, Plaintiff submitted a Reclassification Request Form on November 13, 2008 because she also felt she regularly performed out-of-title work, particularly when both Ms. Gonzalez and Ms. Rosario were absent. (Gonzalez Dep. 19:3-24:6; SMF ¶¶ 47-48.)  Plaintiff never initiated a conversation with Mr. Cupo about her application.  (SMF ¶ 52.) After submitting the Reclassification Request Form, Plaintiff and Ms. Rosario, Plaintiff's direct supervisor, took the JIQ.  (SMF ¶ 57.)

On February 13, 2009, Plaintiff received a letter which stated that the JIQ results showed that her job title was most consistent as a Judiciary Account Clerk 2, her current level, and therefore she would not be reclassified.  (SMF ¶ 59.)  Plaintiff thereafter appealed the decision to the CRB.  (SMF ¶ 61.)  The CRB affirmed the decision of the Classification Unit denying Plaintiff's request for reclassification.  (SMF ¶¶ 62, 65.)  Plaintiff testified, however, that approval of Ms. Gonzalez's reclassification did not affect her own.  (SMF ¶ 73.)

**B. Facts Related to Alleged Retaliation**

**1. Stovall lawsuit**

In November 2006, Plaintiff's co-worker, Flavia Stovall, filed a lawsuit alleging race discrimination, naming Mr. Cupo and Michael

O'Brien, the vicinage's Trial Court Administrator, as defendants. In support of Ms. Stovall's lawsuit, Plaintiff signed an affidavit on June 22, 2008 and was deposed on September 25, 2008.  (SMF ¶¶ 23-24.)  Plaintiff's affidavit detailed various hostile actions against African American females by Mr. Cupo.  (Am. Compl. ¶¶ 12-13 [Doc. No. 15].)

### 2. Union-related travel

Before Plaintiff became her Union's Chief Steward, and prior to the former union chief steward's retirement, the vicinage had facilities at the Hall of Justice in Camden and in Blackwood, New Jersey.  Plaintiff and all union representatives were allowed to travel between these two locations to engage in various union activities.  (SMF ¶¶ 86-88.)  After the former chief steward's retirement, the vicinage closed operations at the Blackwood location and opened a location in Cherry Hill, New Jersey.  (SMF ¶ 89.)

In August 2009, Plaintiff attempted to attend a union-related meeting at the Cherry Hill location regarding another employee.  On August 12, 2009, Assistant Chief Gil Velazquez sent Plaintiff an email which stated: "Management is available to meet with labor to discuss this matter and any other topics, however, since this is a local matter, we are willing to meet with one of the local representatives assigned to the Cherry Hill Executive Campus." (SMF

¶ 91.)

Plaintiff was again told of the travel restrictions in 2011. On June 21, 2011, James Grazioli, the vicinage's Human Resources Manager, sent Plaintiff an email which said: "As discussed on several occasions the shop stewards in Cherry [Hill] handle[] issues out there and the shop stewards in Camden handle issues in Camden. Therefore, the June 24, 2011 meeting will only be with the shop steward from Cherry Hill." (SMF ¶ 96.)   Mr. Grazioli testified that the policy described in the June 21, 2011 email was implemented due to the vicinage's operational needs and to save taxpayer money and was equally applied to all shop stewards.  (SMF ¶¶ 98-99.) Indeed, another union representative was similarly restricted from travel and wrote an email expressing her criticism of the policy. (SMF ¶ 102.)  Plaintiff testified that she believed Mr. O'Brien influenced Mr. Grazioli to send the June 24, 2011 email to her in retaliation for her support of the Stovall lawsuit but also testified she had no "tangible" proof to support this speculation. (SMF ¶¶ 109, 112, 113.)


## II.  <u>JURISDICTION</u>

When Defendant removed Plaintiff's complaint to this Court, the complaint contained both federal and state claims.  As a

result, this Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), which provides in relevant part, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

## III. <u>STANDARDS OF LAW</u>

### A. Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B. Motion to Seal**

In this District, Local Civil Rule 5.3 governs all motions to

seal or otherwise restrict public access to materials filed with the Court and judicial proceedings themselves.  The Rule provides that in order to place a docket entry under seal, the motion to seal must be publicly filed and "shall describe (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available."  L. Civ. R. 5.3(c)(2). The party moving to seal must submit a proposed order that contains proposed findings of fact and conclusions of law.  Id.

## IV.   ANALYSIS

### A. Discrimination

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  A claim of race discrimination under Title VII uses the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination. The elements of a prima facie case depend on the facts of the particular case, and it cannot be established on a one-size-fits-all basis.  Jones v. School Dist.

10

of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999).  The elements
of a prima facie case of failure to promote under Title VII are:
(1) the plaintiff is a member of a protected class, (2) s/he
sought and was qualified for the promotion, (3) s/he was rejected
for the promotion, and (4) a non-member of the protected class was
treated more favorably.  Young v. Pennsauken Twp. Sch. Dist., 47
F. App'x 160, 161 (3d Cir. 2002) (citing Stewart v. Rutgers, The
State Univ., 120 F.3d 426, 432 (3d Cir. 1997)).

If the plaintiff presents a prima facie case, the burden of
production then shifts to the defendant to "articulate some
legitimate, nondiscriminatory reason for the employee's
rejection." Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir.
1997). "The employer satisfies its burden of production by
introducing evidence which, taken as true, would permit the
conclusion that there was a nondiscriminatory reason for the
unfavorable employment decision." Fuentes v. Perskie, 32 F.3d
759, 763 (3d Cir. 1994).  "The employer need not prove that the
tendered reason actually motivated its behavior, as throughout
this burden-shifting paradigm the ultimate burden of proving
intentional discrimination always rests with the plaintiff."  Id.
This is a light burden.  Id.

Once the employer answers its relatively light burden by

11

articulating a legitimate, nondiscriminatory reason for the
unfavorable employment decision, the burden of production rebounds
to the plaintiff, who must now show by a preponderance of the
evidence that the employer's explanation was merely a pretext for
its actions, thus meeting the plaintiff's burden of persuasion.
Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3d
Cir. 2000) (citing Reeves v. Sanderson Plumbing Products, Inc.,
530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).  The
plaintiff must:

> demonstrate such weaknesses, implausibilities,
> inconsistencies, incoherencies, or contradictions in the
> employer's proffered  legitimate reasons for its action
> that a reasonable factfinder could rationally find them
> "unworthy of credence" and hence infer "that the
> employer did not act for [the asserted]
> nondiscriminatory reasons."

Bray, 110 F.3d at 990 (citing Fuentes, 32 F.3d at 765).

"An inference of pretext may arise if the plaintiff can raise
suspicions with respect to the defendant's credibility or the
employer's treatment of the employee."  Id. (citing Josey v. John
R. Hollingsworth Corp., 996 F.2d 632, 638-39 (3d Cir. 1993)).
"The inference, along with the components of the plaintiff's prima
facie case, allow a jury to conclude that the employer was
actually motivated by illegal bias, but it does not compel that
result."  Id.  (citing Sheridan v. E.I. DuPont de Nemours and Co.,

12

100 F.3d 1061, 1066–67 (3d Cir. 1996)).  A plaintiff cannot prevail under Title VII merely by establishing that the employer made a decision that was wrong or mistaken.  <u>Id.</u> (citing <u>Fuentes</u>, 32 F.3d at 765).

The Court now turns to the factors to be considered to state a prima facie case of failure to promote: (1) the plaintiff is a member of a protected class, (2) she sought and was qualified for the promotion, (3) she was rejected for the promotion, and (4) a non-member of the protected class was treated more favorably.

As to the first factor, the parties do not dispute that as an African American Plaintiff is a member of a protected class under Title VII.

As to the second factor, while there is no dispute that Plaintiff applied for reclassification, there is a dispute as to whether Plaintiff and Ms. Gonzalez were similarly qualified for reclassification and promotion.  While Ms. Gonzalez testified to various differences in her job responsibilities prior to her reclassification which warranted reclassification (Gonzalez Dep. 15:5-17:20), Plaintiff testified their job responsibilities were mostly similar (Pl.'s Dep. 72:21-25).  Viewing the evidence in Plaintiff's favor, the Court will assume Plaintiff was similarly qualified for reclassification.

13

Plaintiff satisfies the third prima facie factor because there is no dispute that Plaintiff's application for reclassification was rejected.  Additionally, as to the fourth factor, Plaintiff has set forth prima facie evidence that a co-worker who is not African American was treated more favorably.  Specifically, Plaintiff points to the fact that Mr. Cupo encouraged and helped Ms. Gonzalez but did not likewise offer the same support to Plaintiff.[3]

Accordingly, the Court finds that Plaintiff has stated a prima facie case of failure to promote.  As such, the burden of production shifts to Defendants to articulate a legitimate, nondiscriminatory reason for Plaintiff's reclassification denial. Defendants have done so.  Defendants have cited the JIQ process which assessed Plaintiff's job duties and determined that Plaintiff was ineligible for reclassification.  Further, the JIQ analysis states that no additional information was received from Plaintiff's supervisors (SMF ¶ 68) and Plaintiff testified there

---

[3] Defendants argue Ms. Gonzalez's deposition testimony regarding Mr. Cupo's encouragement is hearsay and therefore inadmissible. Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").  However, Ms. Gonzalez's deposition testimony is not hearsay because it is an opposing party's (Mr. Cupo's) statement and may be considered. Fed. R. E. 801 (d)(2)(A).

was no evidence in the JIQ analysis that the Classification Unit
received additional information from her supervisors (SMF ¶ 69).
Therefore, there is no evidence that Mr. Cupo or Mr. O'Brien
submitted negative commentary or in any way affected Plaintiff's
application.

Consequently, the burden of production rebounds to Plaintiff,
who must now show by a preponderance of the evidence that her
employer's explanation was merely a pretext for its actions, thus
meeting her burden of persuasion.  Plaintiff has not met this
burden because she has put forth no evidence that any employment
action was based on her race.  Plaintiff has come forth with no
weaknesses, implausibilities, inconsistencies, incoherencies, or
contradictions in the Defendants' proffered legitimate reasons for
its action that a reasonable factfinder could rationally find them
"unworthy of credence" and hence infer "that the employer did not
act for [the asserted] nondiscriminatory reasons." Bray, 110 F.3d
at 990.  Plaintiff alleges that pretext is evidenced by Mr. Cupo's
encouragement of Ms. Gonzalez to apply for reclassification and
his alleged influence on the Classification's Unit's decision to
deny Plaintiff's reclassification request.  Plaintiff has
presented no evidence that Mr. Cupo's decision to encourage Ms.
Gonzalez to apply for reclassification was based on racial animus

toward Plaintiff.  Further, Ms. Gonzalez's deposition reveals that Ms. Gonzalez was first in line to take over supervisor duties if Ms. Rosario was unavailable and that Ms. Rosario sought out Ms. Gonzalez to perform increased duties rather than Plaintiff. (Gonzalez Dep. 14:14-17:20.)  Accordingly, summary judgment will be granted as to Plaintiff's race discrimination claim.

### B. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.  Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted).

With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause").  Id. at 341 (citation omitted).  For the "adverse employment action" element, a plaintiff must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "'well might have

16

dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)) (explaining that the "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm").

To establish the third element, a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination, and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Id. at 342. Additionally, a plaintiff must show that the temporal proximity of the protected activity and the employment action is "unduly suggestive." Deans v. Kennedy House, Inc., 587 Fed. Appx. 731, 735 (3d Cir. 2014) (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004)) (finding that the plaintiff's termination more than two months after he filed his second EEOC charge not so close as to be unduly suggestive).

Plaintiff alleges that she was retaliated against for her participation in the Stovall litigation based on two events: (1) Mr. Cupo encouraging only Ms. Gonzalez to apply for reclassification and (2) Mr. Grazioli's June 21, 2011 email which

17

prohibited Plaintiff from traveling outside her location for union meetings. Even if Plaintiff had shown that a reasonable employee would have found the alleged retaliatory actions "materially adverse", a finding this Court does not make, Plaintiff has failed to show a causal connection between Plaintiff's participation in the Stovall lawsuit and these two events.

As to her first argument, Plaintiff claims that Mr. Cupo only encouraged Ms. Gonzalez to apply for reclassification and helped her obtain reclassification. The record is undisputed that Plaintiff signed her affidavit and was deposed in the Stovall litigation after Ms. Gonzalez was encouraged to and applied for reclassification on June 20, 2008. (SMF ¶ 37.) Plaintiff offers no other evidence that her participation in the Stovall litigation caused Mr. Cupo to encourage Ms. Gonzalez to apply or that Ms. Rosario, her direct supervisor, even knew of the lawsuit. Further, Plaintiff testified that approval of Ms. Gonzalez's reclassification did not affect her own. (SMF ¶ 73.) Therefore, there is no but-for causation to support a retaliation claim.

Additionally, Plaintiff does not identify any evidence showing that had she not supported Ms. Stovall's claim of discrimination she would have been allowed to travel between the vicinage's locations as part of her Union duties. While Mr.

18

Grazioli sent the email prohibiting her from travel, Plaintiff
does not offer any evidence, beyond mere speculation, that Mr.
O'Brien influenced or encouraged Mr. Grazioli to prohibit
Plaintiff from traveling.  Rather, Defendants have submitted
evidence that Plaintiff was treated the same as every other union
representative, all of whom were no longer permitted to travel to
alternate locations after the Blackwood office was closed and the
Cherry Hill office was opened.  (SMF ¶¶ 99-103.)  Further, the
time between Plaintiff's participation in the <u>Stovall</u> litigation
and Mr. Grazioli's letter was over three years, which does not
create an inference of causation.  <u>Andreoli v. Gates</u>, 482 F.3d 641
(3d Cir. 2007) (five-month time period between protected activity
and first alleged adverse action, without additional evidence, is
insufficient to raise an inference of a causal link).

### C. Equal Protection

   Plaintiff does not contest the dismissal of the remaining
equal protection claim.  (Pl.'s Opp. Br. at 13.)

### D. Motion to Seal

   Plaintiff requests that the Court seal three pages of
documents which summarize the criteria and parameters for employee
reclassification, the manner in which such criteria were applied
and the conclusions which resulted in Ms. Gonzalez's

19

reclassification and Plaintiff's reclassification denial.
Defendants do not oppose Plaintiff's request.  The Court has
reviewed the documents that are the subject of the motions to seal
and concludes that sealing is warranted at this time.

As an initial matter, the Court notes that while litigants
have an interest in privacy, the public also has a right to obtain
information about judicial proceedings. Pansy v. Borough of
Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1995).  In order to rebut
the presumption of public access, the party seeking
confidentiality must demonstrate "good cause" by establishing that
disclosure will cause a "'clearly defined and serious injury to
the party seeking closure.'" Id. (quoting Publicker Indus., Inc.
v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)). "'Broad allegations
of harm, unsubstantiated by specific examples or articulated
reasoning,' do not support a good cause showing." Id. (quoting
Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d
Cir.1986), cert. denied, 484 U.S. 976, 108 S.Ct. 487 (1987)).

The Court finds that the factors set forth in L. Civ. R.
5.3(c) are satisfied.  The information to be sealed is nonpublic
business and government information.  If Defendants' evaluation
information is not sealed, their analytical system used for
reclassification of public service employees would become public

20

information, harming Defendants because applicants could
potentially learn to defeat the objectives of the test.
Furthermore, less restrictive alternatives are not available,
since the information is pervasive throughout the documents.

In balancing the potential injury versus the public interest
in access to judicial proceedings, the Court finds good cause for
granting Plaintiff's motion to seal.


V.    **CONCLUSION**

For the foregoing reasons, Defendants are entitled to summary
judgment in their favor on all of Plaintiff's claims.  Plaintiff's
motion to seal will be granted.  An appropriate Order will be
entered.


Date: __February 10, 2016__          __s/ Noel L. Hillman____
                                     NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey

21